**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

SONIA ANTOINETTE DODD,

                Petitioner,

vs.                            Case No.:    3:12-cv-1084-J-34MCR
                                                      3:09-cr-51-J-34MCR-4

UNITED STATES OF AMERICA,

                Respondent.

_____/

## <u>ORDER</u>

      This case is before the Court on Petitioner Sonia Antoinette Dodd's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 1, Motion to Vacate)[1] and Memorandum of Facts and Supporting Citations of Law (Doc. 2, Memorandum), both filed on September 27, 2012.  The United States filed a Response opposing collateral relief on March 12, 2014.  (Doc. 11, Response).  Dodd filed a Reply to the government's Response on June 16, 2014.  (Doc. 14, Reply).

      Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[2], the Court has considered the need for an evidentiary hearing and determines that an evidentiary hearing is necessary to resolve the merits of one of the claims in this action.  See Aron v. United States, 291 F.3d 708, 714–15 (11th Cir. 2002) (where a prisoner alleges facts that, if true, would entitle him to relief, a district court

---

[1]     Citations to Dodd's criminal case file, <u>United States of America vs. Sonia Antoinette Dodd</u>, 3:09-cr-51-J-34MCR-4, are denoted as "Crim. Doc. _____."  Citations to Dodd's civil § 2255 case file, 3:12-cv-1084-J-34MCR, are denoted as "Doc. _____."

[2]     Rule 8(a) of the Rules Governing Section 2255 Proceedings requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before deciding on a § 2255 motion.

should order an evidentiary hearing unless the prisoner's claims are patently frivolous or affirmatively contradicted by the record); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) ("On habeas a federal district court need not conduct an evidentiary hearing if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel.").[3]  The remaining claims, however, do not warrant an evidentiary hearing as they are due to be denied based on the record.

## I.   Background

On September 10, 2009, a grand jury sitting in the Middle District of Florida charged Dodd, along with her daughter and two sons, with one count of conspiracy to distribute 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846.  (Crim. Doc. 146, Superseding Indictment).  Prior to trial, Dodd and each of her sons, Fredrick and Alex Lee Campbell, moved to suppress evidence discovered in January 2009 at two residences and two warehouse storage units.  Dodd's sons were unsuccessful in their motions to suppress, but the Court found that officers exceeded the scope of their search warrant when they retrieved and examined certain documents at Dodd's residence, and thus granted suppression of the fruits of that search as to Dodd.  (Crim. Doc. 147, Report and Recommendation on Motion to Suppress; Crim. Doc. 200, Order Adopting R&R).  Dodd's sons then proceeded to trial; at the conclusion of which, the jury found both guilty.  (See Crim. Doc. 259, Jury Verdict as to Fredrick Campbell; Crim. Doc. 260, Jury Verdict as to Alex Lee Campbell).  Having seen her sons

---

[3]   Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point.  Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions that have been issued on or after January 1, 2007.  Fed. R. App. P. 32.1(a).

convicted, Dodd decided to change her plea to guilty on the day that jury selection in her case was set to begin.  (See Crim. Doc. 310, Plea Tr. at 2-7).  Pursuant to a written plea agreement, Dodd pled guilty to the lesser included offense of conspiracy to distribute 100 kilograms or more of marijuana.  (Crim. Doc. 269, Plea Agreement).  In exchange for pleading guilty, Dodd obtained three benefits: (1) reduced criminal liability by being allowed to plead to a lower quantity of marijuana than what the government believed it could prove; (2) a lower base offense level as Dodd and the United States stipulated to a base offense level of 30 under the United States Sentencing Guidelines ("Guidelines"); and (3) an agreement that the United States would recommend a two-level downward adjustment for acceptance of responsibility. See Plea Agreement at 1-3. Permitting Dodd to plead guilty to 100 kilograms or more of marijuana rather than 1,000 kilograms or more was particularly beneficial, as that reduced Dodd's mandatory minimum sentence from 10 years in prison to 5 years in prison, and lowered her maximum sentence from life in prison to 40 years.  Compare 21 U.S.C. § 841(b)(1)(A) with 21 U.S.C. § 841(b)(1)(B).

Before accepting Dodd's guilty plea, the Court conducted a thorough Rule 11 colloquy.  See Fed. R. Crim. P. 11.  In particular, the Court took care to ensure that Dodd was competent to proceed.  Dodd informed the Court that she had a 12th grade education, that she could read and write in English, and that she understood the English language.  Plea Tr. at 10.  When questioned about her medications, Dodd told the Court that she was taking Elavil for depression and insomnia, Seroquil (or Theraquil) and Paxil as mood stabilizers, and hydrochlorothiazide for high blood pressure. Id. at 11.  Dodd's counsel, Wade Rolle, and the United States confirmed for the Court that a magistrate judge had conducted a competency hearing and found Dodd competent to proceed to

3

trial.  Id. at 11-12; see also Crim. Doc. 179, Competency Order.  The Court inquired of

Dodd whether she was able to understand the proceedings and the decision to plead

guilty.  The following colloquy ensued:

> THE COURT:            All right.  Now, those medications that you're taking, are you able to think clearly and logically when you're taking them?
>
> THE DEFENDANT: Yes, most of the time.  Yes.
>
> THE COURT:            Do they help you think clearly and logically?
>
> THE DEFENDANT: It depends – well, it depends when they give it to me.  They have to give it to you at the right time, and I think I got it, like, late last night and then real early this morning so it's kind of mixed together, but – I mean, I can think though.
>
> THE COURT:            Well, ma'am, I have to know that for the purposes of this proceeding that you know and understand everything that we're doing and that you can think clearly and logically, and so –
>
> THE DEFENDANT: Yes, I can.  I can think clearly.
>
> THE COURT:            Is there anything about your medications or when you received them that will hurt your ability to understand what we're doing or –
>
> THE DEFENDANT: No.  It shouldn't.  I don't believe so.
>
> MR. ROLLE:            May I have a brief moment, Your Honor?
>
> THE COURT:            Certainly.
>
> (Defendant conferring with her attorney.)
>
> THE COURT:            Do you understand why we're here this morning, ma'am?
>
> THE DEFENDANT: Yes, I do.
>
> THE COURT:            And do you understand the importance of this proceeding?
>
> THE DEFENDANT: Yes, I do.

THE COURT:            Do you have any concerns at all about your ability to proceed at this time with this hearing?

THE DEFENDANT: No, I don't, ma'am.

THE COURT:            Have you taken the prescribed amount of your medications?

THE DEFENDANT: Yes, I have.

THE COURT:            You have?

THE DEFENDANT: Yes, ma'am.

THE COURT:            And, Mr. Rolle, you've been speaking with Ms. Dodd last night and for the last about three hours or so.  Do you have any concerns regarding her competency or her ability to proceed with the entry of a plea at this time?

MR. ROLLE:            I do not, Your Honor.

THE COURT:            Ms. Savell [Assistant United States Attorney], any concerns in that regard?

MS. SAVELL:          No, Your Honor.

THE COURT:            And just for the purposes of this record, document No. 179 is Judge Snyder's order finding Ms. Dodd competent to proceed with trial, and counsel has not indicated any concern, so we will proceed with the entry of a plea.

Plea Tr. at 12-14.

After finding Dodd competent to continue with the plea hearing, the Court explained Dodd's due process rights to her, and Dodd stated that she understood them. Id. at 14-15.  The Court informed Dodd that by pleading guilty, she waived those rights, including the right "to challenge the way the Government obtained any evidence, statement, or confession." Id. at 15-16.  Dodd again said she understood.  Id.  Dodd did have some misunderstanding about the Plea Agreement's stipulation as to the base offense level and the amount of marijuana attributable to her, which she believed would

be binding on the Court.  See id. at 26.  After the Court explained that it, and it alone, would ultimately determine the offense level based on the amount of marijuana for which she was responsible, Dodd consulted with her attorney.  See id. at 26-27.  Dodd then stated that she understood that the Court alone would determine how much marijuana was attributable to her for Guidelines purposes, and that she still desired to plead guilty.  Id. at 27.  Dodd affirmed that she understood that she would not be able to withdraw her guilty plea even if the Court's calculation was higher than what was stipulated to in the Plea Agreement.  Id.  Similarly, the Court explained that the applicable sentencing range recommended by the Guidelines was only advisory, and that the Court was free to impose a sentence up to the statutory maximum of 40 years in prison, but no less than the mandatory minimum of 5 years.  Id. at 17-18, 21-22.  Dodd confirmed that she understood.

As part of the plea colloquy, the Court explained the elements of the conspiracy charge to Dodd, and the government read the factual basis appended to the Plea Agreement aloud.  Id. at 20-21, 31-33.  Dodd told the Court that she understood the charges and that she admitted the truth of the factual basis.  Id. at 30, 34.  Dodd also told the Court that she was pleading guilty because she was in fact guilty, and not because she had been threatened or coerced.  Id. at 30, 34-35.  Dodd affirmed that there were no promises or understandings off the record that induced her to plead guilty, and that it was her own independent decision to enter into the Plea Agreement.  Id. at 34-35.  Dodd stated that she was satisfied with the representation she received from her attorney, that she had been given plenty of time to speak with her attorney and others about her decision to plead guilty, and that she had no complaints about her treatment.  Id. at 36.  In the end, Dodd confirmed her decision to plead guilty.  Id. at 37.  Based upon the Court's

exchange with Dodd under oath, the Court concluded that Dodd was alert and intelligent, and that she pled guilty knowingly and freely with the advice of competent counsel with whom she was satisfied.  Id. at 37-38.  Dodd told the Court that she agreed with those findings.  Id. at 38.

Dodd next appeared before the Court on August 16, 2010, for sentencing.  The Court calculated Dodd's base offense level under the Guidelines to be 32, and after a two-level reduction for acceptance of responsibility arrived at a total offense level of 30. (Crim. Doc. 379, Sentencing Tr. at 36-37).  Given Dodd's total offense level and her criminal history category of VI, the Court found Dodd's advisory Guidelines range to be 168 to 210 months in prison.  Id. at 38.  Ultimately, the Court sentenced Dodd to 175 months in prison, followed by a term of supervised release of five years.  Id. at 95.

Thereafter, Dodd sought direct review in the Eleventh Circuit Court of Appeals. The Eleventh Circuit affirmed Dodd's conviction and sentence, finding that each of her claims either lacked merit or were barred by a valid sentence-appeal waiver.  United States v. Campbell, et al., 434 F. App'x 805, 811-12 (11th Cir. 2011).  The Eleventh Circuit issued its decision on July 13, 2011, after which Dodd petitioned the Supreme Court for certiorari review.  The Supreme Court denied Dodd's petition for a writ of certiorari on February 27, 2012.  Dodd v. United States, 132 S. Ct. 1648 (2012).  Dodd's conviction and sentence became final upon the denial of certiorari review.  Washington v. United States, 243 F.3d 1299, 1300 (11th Cir. 2001).  Dodd had one year from that date, or until February 27, 2013 to file a timely motion to vacate under 28 U.S.C. § 2255(f)(1).  Dodd filed the current Motion to Vacate on September 27, 2012, and is therefore timely.

Notably, although the Court informed Dodd at her plea colloquy of nearly every consequence of pleading guilty, the record reflects that the colloquy did not address Dodd's exposure to the possibility of mandatory deportation under 8 U.S.C. § 1227(a)(2)(B)(i) on account of being convicted for conspiracy to distribute 100 kilograms or more of marijuana.  Dodd's plea colloquy took place on February 23, 2010, one month before the Supreme Court decided in Padilla v. Kentucky, 559 U.S. 356 (Mar. 31, 2010), that an attorney renders ineffective assistance by failing to inform a defendant of the deportation consequences of pleading guilty.  Thus, the Court did not have the benefit of Padilla's guidance at the time it conducted the plea colloquy.  Dodd now alleges that counsel rendered ineffective assistance by failing to advise her that her guilty plea would subject her to mandatory deportation if the United States Attorney General so ordered.

Notably, after pleading guilty, Dodd filed a complaint against trial counsel with the Florida Bar.  Dodd did not raise the issue of counsel's alleged failure to advise her of the deportation consequences of pleading guilty, but she did raise many other allegations that are also the basis of ineffective assistance of counsel claims in the instant Motion to Vacate.  The Florida Bar ultimately dismissed the complaint, but in his response to the Florida Bar, Dodd's counsel described the scope of his pre-plea consultation with Dodd. (See Doc. 3-2, Bar Complaint Reponse at 5-6).  He recalled advising Dodd about sentencing contingencies, the role of the Guidelines and the potential benefits of pleading guilty, as well as the strength of the government's evidence.  Absent from counsel's description of his consultation with Dodd is any reference to the deportation consequences of pleading guilty.  While counsel may have advised Dodd on potential immigration consequences as well and simply did not mention it in his letter to the Florida

8

Bar because it was not an issue in her grievance, on this record, the Court can make no such determination.

## II.    Opinion

Dodd raises five grounds in her Motion to Vacate.  She contends that (1) trial counsel, Wade Rolle, gave ineffective assistance under <u>Padilla v. Kentucky</u> by failing to advise her that pleading guilty could lead to her deportation; (2) appellate counsel rendered ineffective assistance by failing to raise the <u>Padilla</u> issue on direct appeal; (3) trial counsel provided ineffective assistance that rendered her guilty plea involuntary because he failed to properly advise on or litigate certain Fourth Amendment suppression issues (Grounds Three and Four); and (4) her guilty plea was unknowing and involuntary because she was under the influence of medications when she pled guilty.  The Court will address each contention in turn.

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence.  Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack.  28 U.S.C §2255(a) (2008).  Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack.  <u>United States v. Addonizio</u>, 442 U.S. 178, 184-86 (1979).  A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective

assistance of counsel is normally considered in a collateral attack.  United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

### A. Ineffective assistance of counsel claims

As with any Sixth Amendment ineffective assistance of counsel claim, a § 2255 petitioner must demonstrate both: (1) that his counsel's conduct amounted to constitutionally deficient performance, and (2) that his counsel's deficient performance sufficiently prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984); Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994).  In determining whether the petitioner has satisfied the first requirement, i.e. that counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance.  Weeks, 26 F.3d at 1036.  The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance."  Id.  To satisfy the second requirement, that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different.  Id. at 1036-37 (citing Strickland, 466 U.S. at 694).  In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence.  Strickland, 466 U.S. at 695.  However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."  Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's]

ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

To succeed on a claim that a guilty plea made pursuant to a plea agreement was obtained as the result of the ineffective assistance of counsel, a § 2255 movant must show that trial counsel's advice "fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's errors, [the movant] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 57, 59 (1985) (citations omitted).

### 1. Ground One: Trial counsel's failure to advise Dodd of deportation consequences

In Padilla v. Kentucky, the Supreme Court announced that an attorney performs deficiently in the plea bargaining process if he fails to advise his client of the immigration consequences of pleading guilty.  559 U.S. at 374.  Recognizing that most criminal defense attorneys are not experts in immigration law, the Court explained that "[w]hen the law is not succinct and straightforward… a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences."  Id. at 369.  Where, however, the law is "truly clear" about the deportation consequences of a conviction, a defense attorney has a duty to correctly inform his client of those consequences during plea discussions.  Id.  In Padilla, the Court determined that the law was sufficiently clear to trigger counsel's duty to correctly advise his client of deportation consequences where 8 U.S.C. § 1227(a)(2)(B)(i) provides:

> Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States or a foreign country relating to a controlled substance…, other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

Padilla, 559 U.S. at 368 (quoting 8 U.S.C. § 1227(a)(2)(B)(i)).  As the Supreme Court explained, "Padilla's counsel could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute, which addresses not some broad classification of crimes but specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses." Padilla, 559 U.S. at 368.

In reaching its conclusion in Padilla, the Supreme Court specifically rejected any distinction between cases where an attorney affirmatively misadvises his client on immigration consequences and cases where an attorney merely fails to advise his client at all on the matter.  Id. at 369-70.  The Court reasoned that such a distinction would create two perverse results.  "First, it would give counsel an incentive to remain silent on matters of great importance, even when answers are readily available."  Id. at 370. "Second, it would deny a class of clients least able to represent themselves the most rudimentary advice on deportation even when it is readily available."  Id. at 370-71.

Accepting the petitioner's assertion that his counsel failed to properly advise of the deportation consequences of a guilty plea, the Supreme Court readily concluded that "Padilla ha[d] sufficiently alleged that his counsel was constitutionally deficient."  Id. at 374.  However, because the state court had not considered whether petitioner Padilla had shown the requisite prejudice to warrant habeas relief under a Strickland/ Hill analysis, the Court declined to address the matter further, instead remanding it to the Kentucky courts for a determination of whether counsel's misadvice prejudiced the petitioner.  Id. As in other cases where a petitioner alleges that the ineffective assistance of counsel rendered a guilty plea unknowing or involuntary, the prejudice inquiry would focus on

12

whether "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

The Court observes that although the Supreme Court has held that Padilla is not retroactively applicable on collateral review, Chaidez v. United States, 133 S. Ct. 1103 (2013), this case does not involve a retroactive application of that decision – even though Dodd's Rule 11 plea colloquy took place one month before the Supreme Court handed down Padilla. Whether application of a Supreme Court decision is considered to be a retroactive application is determined by reference to the date on which a petitioner's conviction and sentence became final. If a Supreme Court decision is issued before a petitioner's conviction and sentence become final, then the Supreme Court decision is applicable on collateral review without any need for a retroactivity analysis. Only if a Supreme Court decision is issued after a petitioner's conviction and sentence have become final would the petitioner need to establish that the new decision applies retroactively. See Teague v. Lane, 489 U.S. 288, 301 (1989) ("[A] case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final.") (emphasis added). Dodd's conviction and sentence did not become final until the Supreme Court denied her petition for certiorari review. Washington, 243 F.3d at 1300. Thus, Dodd's conviction and sentence did not become final until February 27, 2012, nearly two years after the Supreme Court decided Padilla. Compare Dodd, 132 S. Ct. 1648 (Feb. 27, 2012) with Padilla, 559 U.S. 356 (Mar. 31, 2010). Padilla therefore applies to Dodd's case without doing so retroactively. See Chaidez, 133 S. Ct. at 1113 ("Under Teague, defendants whose convictions became final prior to Padilla therefore cannot benefit from its holding.") (emphasis added).

Here, Dodd specifically alleges that trial counsel failed to advise her regarding any immigration implications of pleading guilty. Memorandum at 8. Yet, pursuant to 8 U.S.C. § 1227(a)(2)(B)(i), the same statute at issue in <u>Padilla</u>, Dodd's conviction would subject her to mandatory deportation. Thus, counsel had a duty to accurately advise her about the deportation consequences of pleading guilty. <u>Padilla</u>, 559 U.S. at 368. Dodd further alleges that had she known that a conviction for conspiracy to distribute 100 kilograms or more of marijuana would render her deportable, she would not have pled guilty but would have insisted on going to trial. <u>Id.</u> at 10. These allegations are not frivolous. Rather, they state a facially valid claim for relief under <u>Padilla</u>.

The United States contends that the Court should deny Dodd's claim for relief because Dodd was aware that she could be deported by pleading guilty. Response at 9-11. In support of this contention, the United States first points to two paragraphs in Dodd's presentence investigation report (PSR), which state that Dodd is a citizen of the United Kingdom and a resident alien of the United States, and that "[d]ue to [her] immigration status the defendant reported that after completing her term of incarceration, her future plans are unestablished." PSR at ¶¶ 2, 82. The United States also points to a paragraph in the PSR that states "the defendant entered the United States on March 8, 1975, and is a permanent resident alien." <u>Id.</u> at ¶ 73. This evidence certainly shows that Dodd knew she was a resident alien rather than a citizen of the United States. However, it does not really address the question of whether Dodd knew she would become eligible for <u>involuntary deportation</u> by pleading guilty.

The United States also points to a sentence initially included in paragraph 73 of the PSR, to which Dodd objected. The statement said Dodd's mother "does not have

alien resident status and is residing in the United States without proper authorization." Response at 10.  Regardless of its import, this statement says nothing about Dodd's own eligibility for involuntary deportation.  Therefore, this evidence does little to support the conclusion that Dodd knew she could be deported following a conviction.

Next, the United States points to a reference by the Court to deportation during Dodd's sentencing hearing.  As a condition of supervised release, the Court instructed Dodd "[i]f you're deported, you will be ordered not to return to this country unless you can do so legally."  Sentencing Tr. at 96 (emphasis added).  The United States contends that because Dodd did not raise an objection or attempt to withdraw her guilty plea at that time, she waived any claim that she pled guilty unaware of deportation consequences. However, it appears that the Court's statement was the first time that Dodd's potential deportability was discussed in court, and by then Dodd had already pled guilty, unsuccessfully attempted to withdraw her guilty plea once (albeit on other grounds), and the Court had pronounced the sentence.  Under these circumstances, the Court is not convinced that the reference at sentencing, either alone or in combination with the statements in the PSR, affirmatively rebuts Dodd's contentions.[4]

The United States also contends that Dodd's claim is barred by a valid waiver of collateral review.  This argument is mistaken.  Dodd's waiver of collateral review only concerns her ability to collaterally challenge her sentence.  See Plea Agreement at 6. Dodd is challenging the validity of her guilty plea and conviction.  Thus, Dodd's claim falls

---

[4]      Additionally, a defendant is not permitted to withdraw a guilty plea after the sentence is imposed, but must resort to either direct appeal or collateral review.  Fed. R. Crim. P. 11(e).  Notably, the oral pronouncement of the sentence, rather than entry of a written judgment, triggers Rule 11(e)'s bar on withdrawing a guilty plea.  United States v. Vinyard, 539 F.3d 589, 595 (7th Cir. 2008); United States v. Garduno, 506 F.3d 1287, 1289-90 (10th Cir. 2007).  Thus, it is unclear whether Dodd could have withdrawn her guilty plea even if she attempted to do so.

outside the scope of the waiver.  Additionally, even the broadest sentence-appeal waiver does not bar a petitioner from raising a claim of ineffective assistance of counsel with respect to advising the person regarding the entry of the plea.  Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).  Therefore, Dodd is permitted to challenge the validity of her guilty plea notwithstanding the sentence-appeal waiver.

Dodd has pled a prima facie case of a violation of her right to the effective assistance of counsel under Padilla v. Kentucky.  Despite the government's contentions, the Court is not convinced that the record affirmatively rebuts Dodd's claim.  Therefore, Dodd is due to be granted an evidentiary hearing on the allegation that counsel neglected to advise her that pleading guilty would expose her to mandatory deportation.

### 2.  Ground Two:  Ineffective assistance of appellate counsel

In Ground Two, Dodd claims that appellate counsel gave ineffective assistance by failing to raise the Padilla claim discussed above.  The Court finds that appellate counsel did not perform deficiently.  Claims of ineffective assistance of counsel generally require further development of the record, and thus are inappropriate for direct appeal except for rare cases where the record on appeal is sufficient to address the claim.  United States v. House, 684 F.3d 1173, 1210 (11th Cir. 2012) (citing United States v. Merrill, 513 F.3d 1293, 1308 (11th Cir. 2008)).  This is not one of those cases.  Further factual development is necessary to determine whether trial counsel did or did not advise Dodd on the deportation consequences of pleading guilty, as well as whether such neglect prejudiced Dodd.  Because appellate counsel could not have argued the claim based on the appellate record as it then-existed, he did not perform deficiently by not raising the Padilla issue for direct review.

### 3. Grounds Three and Four:   Ineffective assistance with regard to evidentiary issues

Dodd alleges that trial counsel provided ineffective assistance in regard to two categories of evidence.  In Ground Three, Dodd contends that counsel incorrectly advised her on the admissibility of plane tickets, travel documents, UPS receipts and FedEx labels which the government used to establish her participation in the conspiracy.  Memorandum at 11.  As to this evidence, Dodd asserts that counsel inaccurately advised her that the evidence was admissible under the "independent source" doctrine[5], and that such advice caused her to plead guilty.  Id.  In Ground Four, Dodd contends that counsel was ineffective because he failed to move for the suppression of evidence gathered from a consent search of Dodd's luggage at an airport in May 2007.  Id. at 16-17.  Dodd contends that counsel's failure to move to suppress this evidence also caused her guilty plea to be unknowing and involuntary.[6]

When a defendant pleads guilty, she waives all non-jurisdictional challenges to the constitutionality of her conviction, and can only attack the knowing and voluntary nature of the plea.  Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992).  As the Supreme Court explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He

---

[5]    "Under [the independent source] exception, evidence obtained from a lawful source that is independent of any Fourth Amendment violation is admissible, the rationale being that the exclusionary rule should not put the government in a worse position than if the constitutional violation had not occurred." United States v. Noriega, 676 F.3d 1252, 1260 (11th Cir. 2012).

[6]    Ground Four would fail on the merits in any event.  Dodd gave her consent to the May 2007 airport search, which would have rendered the motion to suppress meritless.  (Crim. Doc. 301, Trial Tr. Vol. II at 43-45; Rolle Letter at 2-3).  Counsel does not render ineffective assistance by failing to file a meritless motion.  See Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not [competent].

Tollett v. Henderson, 411 U.S. 258, 267 (1973).   Thus, an otherwise knowing and voluntary guilty plea also waives claims of pre-plea ineffective assistance of counsel. Wilson, 962 F.2d at 997.  Claims that trial counsel gave ineffective assistance in regard to a Fourth Amendment suppression issue are among those challenges waived by a knowing and voluntary guilty plea.  United States v. Winslow, Case No. 8:07-cv-683-T-23EAJ, 2007 WL 2302277 at *2 (M.D. Fla. Aug. 8, 2007); Lipscomb v. Sec'y, Dep't of Corr., Case No. 8:06-cv-58-T-17EAJ, 2008 WL 434881 at *3-4 (M.D. Fla. Feb. 14, 2008). Such is the case even where a § 2255 petitioner claims that counsel's misadvice on a Fourth Amendment issue somehow rendered his guilty plea unknowing so long as the record of the plea colloquy reflects that the defendant entered the plea knowingly and voluntarily.   See Fisher v. United States, Civil Action No. 09-00815-KD-N, 2012 WL 6680315 at *6-9 (S.D. Ala. Dec. 3, 2012) (where review of the plea colloquy reveals that the trial court completely advised the defendant of the consequences of pleading guilty, his rights, the nature of the charges, and the factual basis – especially where the factual basis incorporates the same evidence that the defendant later claims counsel should have suppressed – the defendant will still be deemed to have knowingly and voluntarily pled guilty, and thus to have waived claims of pre-plea ineffective assistance of counsel with respect to a suppression issue).   Indeed, the Supreme Court has held that an attorney's simple misjudgment on the admissibility of evidence does not deprive a guilty plea of its intelligent nature.  McMann v. Richardson, 397 U.S. 759, 770 (1970)  (A "plea of guilty based on reasonably competent advice is an intelligent plea not open to attack

on the ground that counsel may have misjudged the admissibility of the defendant's confession.") (footnote omitted).

Here, Dodd pled guilty after admitting the truth of the charges and the factual basis in open court.  The Court assured that she understood the nature of the charges, the rights she had and would give up by pleading guilty, and the potential sentence she faced.  Prior to accepting the plea, the Court specifically advised Dodd that "[b]y pleading guilty, you also waive and give up your right to challenge the way the Government obtained any evidence, statement, or confession."   Sentencing Tr. at 16.   Dodd stated that she understood.   Id.   Shortly thereafter, the United States recited the factual basis aloud, including the following part:

> During the time frame 2006 through January, 2009, the defendant, Sonia Dodd, participated in the conspiracy by sending packages of marijuana via FedEx and UPS from California to Jacksonville for distribution.  Sonia Dodd also participated in the conspiracy by transporting narcotic proceeds from Jacksonville to California.

Id. at 33.  Dodd affirmed that she heard the factual basis and that it was true.  Id. at 33-34.  Dodd therefore knew specifically what facts comprised the government's evidence in the case against her, and that if she pled guilty she would waive the right to challenge the way the government obtained that evidence.  That very same evidence is what Dodd now argues counsel was ineffective for not seeking to suppress.  Importantly, Dodd told the Court that she was satisfied with her counsel's representation and proceeded to plead guilty.  Id. at 36-38.  Dodd therefore pled guilty having been fully apprised of her rights, her waiver of those rights, what facts the government relied on in its case against her, and her possible sentence.

The record further reflects that prior to pleading, counsel took care to advise Dodd on the admissibility of evidence supporting the government's case against her.  In his letter to the Florida Bar responding to Dodd's complaint, counsel recalled in pertinent part:

> Prior to Ms. Dodd stating that she wished to enter a plea, she inquired about how two groups of evidence would be entered in against her at trial.  One concerned how the United States had obtained evidence of her numerous trips to California.  I explained to Ms. Dodd that I would be objecting to any evidence of flights that she and other family members had made to California because I believed that they were the fruits of an illegal search of her residence and storage facility.  I explained to Ms. Dodd that evidence produced at the trial of her sons indicated that they had been watching her trips from at least 2007 and that the United States had subpoenaed every airline flying out of Jacksonville and Orlando to Southern California for her and her co-defendants' flight records.  I had spoke [sic] to Assistant United States Attorney Julie Savell that morning and she indicated that the United States would be trying to enter this evidence under the independent source rule.  I told Ms. Dodd that I did not know how the Judge would rule on the entry of this evidence and that Judge Howard usually took the most conservative approach to the entry of evidence.  The second issue was how the United States was going to enter into evidence the numerous FedEx and UPS shipping labels/ receipts.  I explained to Ms. Dodd that this issue was more problematic for the defense due to the fact that the United States had already known prior to the search of her residence that numerous packages were being shipped from Southern California to numerous addresses controlled by her sons and associates.  I explained to Ms. Dodd that in my opinion, that the evidence of the shipping labels would likely be allowed into evidence because the United States can show independent knowledge of the shipments before the search warrant was executed on her home.  This conversation with Ms. Dodd took over two hours and caused the Judge to delay the start of the trial at our request pending the outcome of these plea negotiations.  It should be noted that a plea deadline had already been established in this case and federal judges normally do not allow pleas pass [sic] the deadline.

Rolle Letter at 5.  Dodd does not dispute counsel's recollection, rather she contends that counsel's belief that the UPS and FedEx shipping labels could be admitted under the "independent source" doctrine was factually mistaken because law enforcement discovered those documents in a storage unit only as a result of an unlawful search of her residence in January 2009.  However, excerpts from the trial against Dodd's sons

20

confirm counsel's understanding that the government had been conducting surveillance on Dodd and her family, and thus had evidence tying Dodd to the drug trafficking well before officers conducted a partially unlawful search of her residence.

The Court next turns to the second category of evidence upon which Dodd bases her claim, during the trial of Fredrick and Alex Campbell, Officer Anthony Shapiro of the Los Angeles County Sheriff's Department (LASD) testified to an incident in 2006 where he stopped Dodd at Los Angeles International Airport (LAX) on suspicion of being a narcotics trafficker.  (Crim. Doc. 301, Trial Tr. Vol. II at 13-34).  Shapiro testified that he stopped Dodd because of suspicious behavior consistent with drug trafficking.  Id. at 13-15.  Under questioning, Dodd told Shapiro that she had $3,000 on her, but following a consent search Shapiro discovered that she was actually carrying $16,000 in money orders and $29,000 in currency, as well as three cell phones, id. at 16-18, 21, which Shapiro testified was consistent with trafficking.  Another officer from the LASD, Scot Groves of a narcotics task force operating at LAX, testified to a separate incident in May, 2007.  Trial Tr. Vol. III at 36-61.  Groves testified that he received a specific tip from a DEA agent to be on the lookout for Dodd.  Groves followed up on the tip and stopped Dodd after she disembarked her flight.  Id. at 39.  After lying to Groves about having no checked luggage and the amount of money she was carrying, Dodd consented to a search of her checked luggage, which revealed $68,000 concealed in a hidden compartment.  Id. at 40, 42-44, 45, 48.  Dodd disavowed ownership of the money and stated she did not know how it got in her luggage.  Id. at 49.  Groves testified that a drug-sniffing canine alerted to the scent of narcotics in Dodd's luggage, though officers did not

find any drugs in the bag. Id. at 59.[7]  Additionally, a detective with JSO presented a chart

tracking Dodd's and her sons' air travel between Florida and California from 2006 to 2008.

(Crim. Doc. 302, Trial Tr. Vol. III at 178-85).[8]  That same detective indicated that JSO was

tracking shipments to Dodd's son, Fredrick Campbell, as well as shipments to individuals

and addresses associated with Campbell.  Id. at 7-8.  Finally, a friend of Dodd's sons,

Spencer Enochs, testified that he saw Dodd at her sons' house during drug transactions.

(Crim. Doc. 300, Trial Tr. Vol. I at 55-58).  Enochs further testified that he tried to talk to

Dodd about "her son's problems" after he received a grand jury subpoena, but that Dodd

was evasive and even made Enochs lift up his shirt so that she could check him for a

wire. Id. at 57.

On this record, the Court cannot say that counsel's advice to Dodd that the

government possessed incriminating evidence independent of the January 2009 search

of her residence "fell outside the wide range of competent assistance." Weeks, 26 F.3d

at 1036.  The record is not sufficient for the Court to determine whether counsel was in

fact correct in his advice that certain evidence would likely have been admissible under

---

[7]     Although the Jacksonville Sheriff's Office (JSO) only obtained the records of Dodd's 2006 and 2007
encounters with Los Angeles police after the unlawful search of her residence in 2009, that does not render
evidence of those incidents the "fruit of a poisonous tree."  The Supreme Court has explicitly rejected a
"but-for" test for determining what evidence is fruit of an illegal search.  Wong Sun v. United States, 371
U.S. 471, 487-88 (1963) (Declining to "hold that all evidence is 'fruit of the poisonous tree' simply because
it would not have come to light but for the illegal actions of the police.").  That is, just because police did not
think to obtain the 2006 and 2007 records until they searched Dodd's house does not make those records
suppressible as well.  The police records were created and maintained by the LASD well before, and
independent of, JSO's search of Dodd's house.  Moreover, JSO did not have to rely upon evidence derived
from the search of Dodd's residence in order to request the LASD records.  Thus, evidence from the LASD
records that tied Dodd to her sons' marijuana conspiracy would not have been excludable as fruits of the
illegal search of Dodd's residence.

[8]     The detective did not state whether the airline records were gathered only as a result of evidence
discovered during the search of Dodd's residence, or from something else.  Thus, counsel could not have
known only from observing the trial whether this evidence, as to Dodd, would have been fruit of a poisonous
tree.

the "independent source" doctrine.   However, whether a guilty plea is unintelligent because counsel erroneously thought evidence to be admissible depends "not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases."  McMann, 397 U.S. at 770.

The record reflects that counsel closely observed the trial of Dodd's sons in an attempt to glean information that would help him serve his client.  In observing those trials, counsel developed the impression that the government had evidence connecting Dodd to her sons' drug conspiracy that was independent of the suppressible evidence derived from the unlawful search of Dodd's home.  On this record, that impression is not one that this Court can say was manifestly unreasonable.   Moreover, the Court must consider counsel's conduct in context.  On the day before her trial was set to begin, Dodd informed counsel that she wished to plead guilty after having reviewed transcripts of her sons' trial testimony.   Rolle Letter at 5.   Counsel contacted the prosecutor at 10:30 pm the night before jury selection to negotiate a last-minute plea deal, and those discussions continued for two hours the next morning.  Id.  Counsel obtained a plea agreement that allowed Dodd to plead guilty to a reduced quantity of marijuana (thereby reducing her mandatory minimum sentence from 10 years to 5 years and the maximum sentence from life to 40 years), receive a stipulated base offense level, and receive a two-level reduction for acceptance-of-responsibility even though plea deadlines had long passed.  Dodd, and counsel, thus had to choose between the certain benefits of the plea offer and the risk of going to trial and being convicted of a more serious offense.  Given this choice, and based

on counsel's observations at the trial of Dodd's sons, the Court cannot say that his advice was unreasonable.

Although Dodd contends that counsel's advice on the admissibility of certain evidence caused her plea to be unknowing, the record of the plea colloquy refutes that contention and reflects that she pled guilty with full knowledge of her rights and of the consequences of her choice (except with regard to deportation consequences). Dodd's decision to plead guilty to a lesser quantity of marijuana was a calculated decision to avoid the same fate as her sons, both of whom were found guilty just before Dodd asked to switch her plea. While Dodd broadly contends that counsel's advice deprived her plea of its intelligent nature, she does not explain how. Indeed, it is difficult to explain how that is so where the factual basis recited both in the Plea Agreement and at the plea colloquy informed Dodd that the evidence against her consisted of UPS and FedEx shipping labels, that by pleading guilty she waived the right to object to the manner in which the government obtained that evidence, and then she still pled guilty. Therefore, Dodd's free and knowing guilty plea precludes her from claiming that trial counsel's misadvice on the admissibility of certain evidence rendered her plea unknowing or involuntary. "Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts." McMann, 397 U.S. at 770. The possibility that counsel may have misjudged the admissibility of travel records and shipping documents under the "independent source" doctrine is not enough, by itself, to render her otherwise valid plea unintelligent or involuntary. See id. Because Dodd received the assistance of competent counsel, and Dodd's plea colloquy demonstrates that she made a free and informed

decision to plead guilty, as to Grounds Three and Four the Motion to Vacate is due to be denied.

## B. Ground Five:  Voluntariness of Dodd's guilty plea

Finally, Dodd contends that her guilty plea was unknowing and involuntary because she was under the influence of medications during her plea colloquy.  In order to ensure that a guilty plea is knowing and voluntary, a district court must address the "three core objectives" of Rule 11 to ensure that: (1) a guilty plea is not the product of coercion, (2) the defendant understands the nature of the charges, and (3) the defendant understands the consequences of pleading guilty. United States v. Camacho, 233 F.3d 1308, 1314 (11th Cir. 2000).  That framework applies as well to cases where a petitioner claims that her guilty plea was involuntary on account of the influence of medications. See United States v. Evans, 243 F. App'x 538, 539 (11th Cir. 2007).

The record of Dodd's plea colloquy amply shows that the Court inquired of the effect of Dodd's medications on her ability to think rationally and to understand her decision to plead guilty.  Plea Tr. at 12-14.  Dodd assured the Court that she was able to think clearly and logically, and that her medications did not impair her ability to understand the proceedings.  Id. at 13.  Indeed, after discussing her medications, Dodd specifically stated that she wanted to proceed with pleading guilty.  Id.  Counsel for Dodd, after having spent significant time conferring with Dodd that morning, and counsel for the United States also both assured the Court that each was confident Dodd was competent to proceed.  Id. at 14.  "[T]he representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings."

Blackledge v. Allison, 431 U.S. 63, 73–74 (1977).  "There is a strong presumption that the statements made during the [guilty plea] colloquy are true."  United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994).  "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."  United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988).  Dodd represented under oath that her medications did not prevent her from thinking soundly and that she wished to plead guilty.  Attorneys for both sides indicated that they were not concerned about Dodd's competence, and Dodd's behavior at the plea hearing reflected that she was alert.  Dodd has not presented compelling evidence to rebut the verity of the representations that she and counsel made during the plea colloquy.[9]

       As has already been discussed as well, Dodd assured the Court that she pled guilty free of coercion or any inducements that were outside of her Plea Agreement, and that it was her own independent decision to do so.  Plea Tr. at 30, 34-35.  The Court informed Dodd of the nature of the charges, the factual basis, and of the consequences of pleading guilty (other than those related to deportation), and Dodd stated that she understood each.  Except insofar as she was unaware of the deportation consequences of pleading guilty, the record shows that Dodd pled guilty knowingly and freely.  For the foregoing reasons, Dodd's allegation that her medications caused her to unknowingly or involuntarily plead guilty is due to be denied.

## III.    Conclusion and Request for Evidentiary Hearing on Ground One

       In consideration of the foregoing, the Court concludes that with the exception of Dodd's claim that counsel was ineffective for failing to advise her of the immigration

---

[9]       Additionally, the Court had already conducted a competency hearing prior to the change-of-plea and found Dodd competent to stand trial.  See Competency Order.

consequences of a guilty plea, the Motion to Vacate is due to be denied.  However, Dodd is entitled to an evidentiary hearing on the claim that counsel rendered ineffective assistance by failing to advise her that pleading guilty exposed her to mandatory deportation. Accordingly, the Court requests that the Honorable Monte C. Richardson, United States Magistrate Judge, conduct an evidentiary hearing consistent with <u>Padilla v. Kentucky</u> and <u>Strickland v. Washington</u> in order to ascertain whether Dodd's trial counsel rendered ineffective assistance in advising her on pleading guilty.  At the hearing, the Court should hear testimony from Wade Rolle (Dodd's trial counsel in the underlying criminal case), Petitioner Sonia Antoinette Dodd, and any other witnesses whose testimony the parties deem relevant to these proceedings.  By separate order, Judge Richardson will appoint counsel for Dodd, set a date for the evidentiary hearing, and provide any other specifics deemed necessary.  Following the evidentiary hearing, the Court requests that Judge Richardson issue a Report and Recommendation as to Dodd's claim that trial counsel provided ineffective assistance with respect to advice on pleading guilty and adverse immigration consequences.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby

**ORDERED:**

1. Petitioner Sonia Antoinette Dodd's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 1) is taken under advisement as to Ground One pending completion of an evidentiary hearing.

2. In all other respects, Dodd's Motion to Vacate is **DENIED**.

3. The Court will refrain from deciding whether to grant a certificate of appealability as to any of the issues raised in Dodd's Motion to Vacate until after the Court has reviewed the forthcoming Report and Recommendation and any objections thereto.

**DONE AND ORDERED** at Jacksonville, Florida this 21st day of November, 2014.

MARCIA MORALES HOWARD
United States District Judge

lc 19

Copies:
Honorable Monte C. Richardson
United States Magistrate Judge

Pro se party
Counsel of record
Wade M. Rolle, Esq.